UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF NEW YORK
-----------------------------------------------------------x

RICHARD J. SASSI, II,

          Plaintiff,  06 Civ. 10450 (CLB)

 -against-         **PLAINTIFF'S RULE 56.1
                 COUNTERSTATEMENT**

CLARA LOU GOULD, et al.
         Defendants.

-----------------------------------------------------------x

  Plaintiff Richard J. Sassi, II, by his attorneys Lovett & Gould, LLP submits the following Counterstatement to the Defendants' "Statement of Material Facts" pursuant to Local Rule 56.1(a):

**RESPONSE TO DEFENDANTS RULE 56.1 STATEMENT**

  1. The individual defendant council members are elected officers serving a specified term. (Answers of Defendants A, B, C, etc.,).

  **Response: Since the individually named Defendants have been dropped as party defendants, this "fact" is irrelevant to the instant motion [Sassi II, Affidavit in Opposition to Motion for Summary Judgment (hereinafter Sassi II Affidavit)] at paras. 4-5.**

  2. Defendant Joseph Braun is an appointee of the City Council serving as City Administrator of the City of Beacon. (Affidavit of Joseph Braun,).

  **Response: Since this individually named Defendant has been dropped as a party defendant, this "fact" is irrelevant to the instant motion. Ibid.**

  3. Plaintiff is a police officer in the City of Beacon Police Department. (Complaint,).

**Response: Admitted.**

4. Plaintiff's date of hired [*sic.*] as police office is August 20, 2001. (Exhibit "3" of [*sic.*] Braun affidavit).

**Response: Admitted though irrelevant (Sassi, Sr. Affidavit in Opposition to Motion for Summary Judgment [hereinafter "Sassi, Sr. Affidavit")] at para. 6(c).**

5. Plaintiff applied for an appointment to a police detective position in the Beacon Police Department, an appointment which is not subject to Civil Service Law appointment requirements. (Exhibit "2" of Braun Affidavit.

**Response: Admitted.**

6. The Chief of Police in the Fall of 2005 was Chief Richard Sassi, SR [*sic.*], father of the plaintiff. (Complaints).

**Response: Admitted.**

7. The City Council appointed Police Officer Rios in December 2005 to the first detective position sought by Plaintiff. (Complaint).

**Response: Admitted.**

8. Officer Rios' date of hire as a police officer for the City is August 28, 1989. (Exhibit "3" of [*sic.*]Braun Affidavit).

**Response: Admitted though irrelevant (Sassi, Sr. Affidavit, para. 6(c).**

9. Officer Rios has approximately twelve years more seniority than the plaintiff. (Braun affidavit).

**Response: Admitted. In that connection while Defendants repeatedly assert conclusorily that Rios and Thomas were the best candidates for promotion to detective, at no time have Defendants or any of them ever disclosed anything whatsoever about**

2

those officers' respective service records, training, special certifications, arrest records, statistics, educational achievements, awards and/or commendations.

10. Plaintiff filed his first complaint alleging that he was not appointed to the detective position obtained by [*sic.*] Officer Rios because of the City of Beacon's anti-nepotism law and in retaliation for his father's, the Police Chief [*sic.*], exercise of speech [*sic.*] against certain City Council actions. (Complaint, Exhibit "1" to DeFio affidavit).

**Response: Admitted though irrelevant.**

11. The plaintiff does not allege that he engaged in any speech or protected activity. (Exhibit "1" DeFio affidavit).

**Response: In connection with the first filing by Plaintiff he claims First Amendment retaliation on a third party standing basis. In his third filing he contends *inter alia* that he was the subject of further retaliation by reason of his having filed <u>Sassi I and Sassi II</u> - - and that the filing of both of those initial actions constituted activity protected by reason of the First Amendment to the United States Constitution. *See* Complaints, annexed to Defendants' motion papers.**

12. Plaintiff's claim in his first complaint against Council Member Kyriacou for defamation was dismissed by this Court by decision dated May 6, 2006. (Decision, Exhibit "10" DeFio affidavit).

**Response: Admitted though irrelevant.**

13. The Court held in its decision dated May 6, 2006 that the anti-nepotism law was invalid. (Exhibit "10" DeFio affidavit).

**Response: Admitted.**

3

14. The Council Members of the City of Beacon at the time of the [*sic.*] nepotism law being passed and Officer Rios' appointment in 2005 were Clara Lou-Gould, Lee Kyriacou, Sam Way, Deanna Leake, Eleanor Thompson, Fred Antalek and Mike Fasano. (See Exhibit "1" DeFio Affidavit).

**Response: Admitted but irrelevant since the individually named Defendants have been dropped as parties herein (Sassi, II Affidavit at paras. 5-6).**

15. The Court granted the 2005 Council members legislative immunity relative to their passage of the anti-nepotism law. (Exhibit "10" DeFio Affidavit).

**Response: Admitted though irrelevant.**

16. Plaintiff filed a second complaint alleging that he was not appointed for [*sic.*] the detective position, obtained by Police Officer Rios, a [*sic.*] Hispanic, because Plaintiff was not Hispanic, in violation of Title VII of the Civil Rights Act. (Complaint, Exhibit "11" DeFio Affidavit).

**Response: Admitted and additionally states that: i) during Rios promotional interview for the position of detective his demeanor was "terrible" and he "appeared to be delusional", and ii) at the time of Rios' appointment as detective he was lesser qualified, had less certifications and awards, had less specialized training, and had previously lied to the Chief of Police regarding a civilian complaint in which it was alleged that he (Rios) used a handgun to threaten youngsters playing "manhunt" near Rios' residence; and had committed the crime of Falsely Reporting an Incident, a Class A Misdemeanor for departmentally lying about supposed heroic efforts he engaged in saving the life of Shannon Finch's then infant daughter (Sassi, Sr. Affidavit, para. 5).**

4

17. The Plaintiff contends that the basis for the second complaint was a result of the Mayor's statement that Officer Rios was fluent in Spanish. (Exhibit "11" DeFio Affidavit).

**Response: Denied. Plaintiff filed his second complaint by reason of Defendants' promotion of a lesser qualified male Hispanic as detective instead of appointing the better qualified male Caucasian to that position, to wit, Plaintiff (*See* response to paragraph "16",** *supra.*

18. In a memo dated December 1, 2005, the Chief acknowledged that the reasons for appointment were "his length of service, his awards and his ability to speak Spanish", there was no mention of his ethnicity. (Gould affidavit, Exhibit "B").

Response: Denied as a materially false recital of that which is contained in Exhibit B to the Gould Affidavit. In any event, as stated this recital of "fact" by Defendants is incoherent, *e.g.*: "The Chief acknowledged that the reasons for [whose?] appointment" In addition, length of service in and of itself is not a valid criteria for determining whether or not an individual should or should not be promoted and Plaintiff was the best qualified for promotion given his service record, experience, specialized training, educational background, certifications, awards and commendations (Sassi Sr. Affidavit, paras. 6(c) ; Sassi II Affidavit, para. 3;Sassi Sr. deposition of 11-15, 06, pp. 11-15, 29; Sassi II deposition of 11-15-06, pp. 16-20, 55-6, 57).

19. The Mayor did not indicate that Officer Rios was appointed because he was Hispanic, one of the main reasons was length of service, which was acknowledged by the Chief in his memo. (Gould Affidavit).

Response: Denied [Sassi, Sr. Affidavit, para. 6(c); Antalek Affidavit of 3-7-06, para. 3 ("In my opinion Rios' bilingual capability was an extremely important consideration in making

the promotion); Gould Affidavit of 11-30-06, para. (Rios' ability to speak fluently in Spanish was a consideration).

20. The Mayor also did not recommend for appoint Officer Rios exclusively for his ability to speak Spanish, rather it was merely one more plus when considering him. (Gould affidavit).

**Response: Denied. In addition neither the Mayor, the other members of the City Council, nor the City Administrator had any factual basis upon which to determine the relative skills, work ethic, job performance, and other qualifications of Rios, Thomas and/or Sassi, II since they did not work with them or any of them. Chief Sassi, by way of contrast, was the best qualified and knowledgeable individual with in depth knowledge of the various candidates' capabilities, skills, professional experience, and qualities that should be considered in determining who should be promoted. Sassi, Sr. Affidavit, para. 5(b)(vi); Gould Affidavit of 11-30-06, paras. 2-3).**

21. A second detective position become [*sic.*]open and was filled with [*sic.*]Police Officer Mark Thomas. (Complaint, Exhibit "18" DeFio Affidavit).

**Response: Assuming *arguendo* Defendants intended to state that Mark Thomas was promoted to the position of detective following Rios' promotion as such: "Admitted".**

22. At the time of the Thomas [*sic.*] appointment, the City Council was comprised of a different group of individuals: Mayor Gould, Elizabeth Foster, Steven Gold, Eleanor Thompson, Lee Kyriacou, Charles Kelly, and Philip Shea. (Exhibit "20" DeFio Affidavit).

**Response: Admit though irrelevant since the individually named Defendants have been dropped as parties to this litigation (Sassi, II Affidavit, paras. 5-6).**

6

23. The Plaintiff instituted a third lawsuit as a result of the appointment of Police Officer Mark Thomas. (Exhibit "18" DeFio Affidavit).

**Response: Plaintiff filed his third law suit as a result of the First Amendment retaliatory skipping of him in favor of Police Officer Mark Thomas, a lesser qualified and disabled member of the Police Department who had filed for Disability Retirement (Sassi, Sr. Affidavit, para. 6(a,b).**

24. The third lawsuit named all of the new Council persons as individual defendants. (Exhibit "18" DeFio Affidavit).

**Response: Admitted though irrelevant since all individually named Defendants have been dropped as parties.** *Ibid.*

25. Police Officer Mark Thomas' date of hire as a police officer with the City is August 10, 1992. (Exhibit " 3 of Braun Affidavit).

**Response: Admit, though this circumstance alone is irrelevant (Sassi, Sr. Affidavit, para. 6(c).**

26. In the Fall of 2005, three detectives conducted interviews of interested candidates for the position of detective. (Exhibit "24" DeFio Affidavit).

**Response: Admit.**

27. The person [*sic.*]panel was comprised of three detectives: then Lt. Scofield, Sgt. Musmeci and Sgt. D'Amicantonio. (Exhibit "24" DeFio Affidavit).

**Response: Although the Defendants' statement of "fact" is incoherent, if they intended to alleged that the interview committee was comprised of Det. Lt. Scofield, Sgt. Musmeci and Det. Sgt. D'Amicantonio, our response is: Admitted.**

7

28. The panel prepares [*sic.*] a memo dated October 27, 2005 to the Chief ranking the five candidates. (Exhibit "24" DeFio Affidavit).

**Response: Denied. Scofield alone created the memorandum. The original memorandum did not rank any of the candidates in order of preference. Only a recent fabrication of that memorandum, created by Scofield since he became "Acting Chief of Police", ranked the applicants "1" through "5" [Sassi, Sr. Supplemental Affidavit in Opposition to Motion for Summary Judgment (hereinafter "Sassi, Sr. Supplemental Affidavit), at paras. 3-5].**

29. The panel ranked the candidates as follows: P.O. Thomas, P.O. Rios, P.O. Sassi, P.O. Allencastro and P.O. Buddenhagen. (Exhibit "24" DeFio Affidavit).

**Response: False. As set forth *supra* the members of the interview committee did not rank the interviewees. Scofield, in a recent fabrication, created a false memorandum indicating that the committee ranked the interviewed candidates in order of preference [Sassi, Sr. deposition of 11-15-06, pp. 10, 13; Sassi, II deposition of 11-15-06, pp, 52, and 118-19 (Scofield told Sassi, II that he and Thomas were preferred over Rios by the interview committee and that he (Scofield) concurred with Sassi, Sr. that Sassi, II should be promoted; Scofield deposition of 11-27-06, pp. 24, 27).**

30. Now Captain Scofield and Detective Lieutenant Musmeci confirm that the memo was delivered to the then Chief Sassi contemporaneous with the drafting of the memo. (Exhibits "26" and "27" DeFio Affidavit).

**Response: The memo provided to Chief Sassi did not rank the candidates (Sassi, Sr. Supplemental Affidavit, paras. 3, 5(b)(vi), 6(c).**

31. Chief Sassi in a memo dated the very same day, October 27, 2005 recommends [*sic.*] his son, the plaintiff for the promotion. (Braun Affidavit attached as Exhibit "E" to Exhibit "2").

**Response: Chief Sassi recommended Plaintiff for promotion since he was the best qualified candidate (Sassi, Sr. Affidavit, para. 3; Sassi, Sr. Supplemental Affidavit, para. 4(c,d); Sassi, II Affidavit, para. 3(c, d, e, f).**

32. By memo dated November 14, 2005 to Joseph Braun, City Administrator, then Chief Sassi indicates [*sic.*] that P.O. Thomas is his second choice for detective. (Braun Affidavit attached as Exhibit "F" to Exhibit "2").

**Response: Admit, except that given Thomas' job injuries, disability status, and application for disability retirement it was uncertain if he could ever perform the duties of either detective or police officer again (Sassi, Sr. Affidavit, para. 6).**

33. The City Administrator requests [*sic.*] by way of memo to the then Chief, a list of the eligible candidates for consideration to the position of Detective. (Braun Affidavit attached as Exhibit "I" to Exhibit "2").

**Response: The Chief recommended Plaintiff for the promotion.**

34. In response to that request, the then Chief provides [*sic.*] a written memo dated November 21, 2005, identifying those individuals that were interviewed for the position. (Braun Affidavit, Exhibit "2").

**Response: Admit.**

35. The Memo [*sic.*] dated November 21, 2005 from then Chief Sassi indicates that the list is provided to you [*sic.*] in no particular order and proceeds [*sic.*] to list the officers as

follows: PO Mark Thomas, PO Richard J Sassi 11, PO Jose Rios, PO Christian R. Allencastro, and PO Greg Buddenhagen. (Braun Affidavit Exhibit "2").

**Response: Denied. The memorandum speaks, albeit more coherently, for itself (*see* Sassi, Sr. Supplemental Affidavit, paras. 2-4).**

36. The memo which lists the officers in no particular order, fails to inform the City Administrator that the detectives had ranked the officers and listed PO Thomas first and PO Rios second. (Braun affidavit and Exhibit "2").

**Response: Denied. The list provided to Chief Sassi by Scofield did not list Rios "second" and the members of the interview committee did not: i) establish a list of candidates in a numeric listing by preference and/or any other order of preference (Sassi, Sr. Supplemental Affidavit, paras. 2-5).**

37. PO Thomas informed the Mayor when the second opening became available about the rankings and the memo. (Mayor Affidavit).

**Response: Deny knowledge or information sufficient to form a belief as to this allegation of "fact", which in any event is irrelevant.**

38. The Beacon City Council appointed Police Officer Mark Thomas to the second detective position. (Braun Affidavit, X13, Mayor's Affidavit).

**Response: Admit.**

39. The plaintiff is currently the highest paid police officer in the department based upon the amount of overtime received. (Exhibit "3" of Braun Affidavit).

**Response: Admit, though irrelevant with respect to the instant motion. By reason of being twice skipped for promotion Plaintiff's eligibility as a matter of law for future promotions has been curtailed; his professional career has been stunted; and his**

10

**entitlement to earn overtime at a higher rate of pay than that of a police officer has been impaired** (*See* **Sassi, II deposition of 11-15-06, p. 74).**

### AS TO PLAINTIFF'S RULE 56.1 COUNTERSTATEMENT

40. Prior to the City's June 2005 enactment of a now-judicially declared void "nepotism" law, Plaintiff's father repeatedly expressed in a non-disruptive manner his concerns regarding a series of matters of public importance (Exhibit 1 to Sassi, Sr. Affidavit). In that connection he expressed those opinions, not as Chief of Police, but solely as a resident/taxpayer in the City of Beacon (Sassi, Sr. Affidavit, para. 2; Exhibit 1 to said Affidavit.

41. As a proximate result of the Chief of Police's expression of said concerns, he became the subject of a series of First Amendment retaliatory disciplinary charges, commencing prior to June 2005 and continuing to date. *Id.* at 7, 8, 9.

42. In June of 2005 the City Council enacted the said nepotism law. The only person in the employ of the City of Beacon who was affected by that legislation was Plaintiff, by reason of the circumstance that his father was the Chief of Police. The law on its face precluded Plaintiff's promotion so long as his father remained as Chief of Police (Sassi II, deposition of 11-15-06, pp. 29-30, 59; Sassi, Sr. Affidavit, para. 4; Exhibit C to Braun Affidavit of 11-30-06).

43. In the Fall of 2005 a vacancy for the position of "detective" occurred in the Police Department and Plaintiff applied for appointment to that position (Sassi, II Affidavit, para. 3(b); Sassi, II deposition of 11-15-06, p. 52).

44. In that connection Plaintiff was the best qualified applicant for that promotion (Sassi, Sr. Affidavit, paras. 3, 5, 6; Exhibit B to Sassi, Sr. Affidavit; Sassi, Sr. Supplemental

Affidavit, paras. 3-5; Exhibit B to Gould Affidavit of 11-30-06; Sassi, II, deposition of 11-15-06, pp. 16-20, 55-6, 57; Sassi, Sr. deposition of 11-15-06, p. 29).

45. An interview committee was established for the purpose of evaluating the candidates for promotion, as a result of which now-Acting Chief of Police Glenn Scofield prepared a list of five applicants for consideration by the Chief of Police. In doing so Scofield advised the Chief of Police that the list of five individuals' names was in no particular order - - a circumstance to which the members of the interview committee had agreed (Sassi, Sr. Supplemental Affidavit, paras. 2-5).

46. During the interview process one of the applicants, Jose Rios, appeared "delusional" and his interview demeanor was considered "terrible" [Sassi, Sr. Supplemental Affidavit, para. 4(b)].

47. Prior to the interview process Rios had:

   a. Been the subject of a civilian complaint, known to at least one member of the City Council, that alleged he had threatened neighborhood children with a handgun when he confronted them playing "manhunt" near his residence in the City of Beacon,

   b. Lied to the Chief of Police about that incident,

   c. Falsely reported to the Police Department that he had engaged in heroic measures that resulted in the saving of the life of the infant child of Shannon Finch, a resident of the City of Beacon whose home is in immediate proximity to that of Rios,

   d. Falsely reported to the media his deceitful claim regarding the Finch infant lied to the Chief of Police about having done so, and

   e. Threatened Manely Finch with arrest for no lawful

12

reason - - other than, as Rios put it, to get Mr. Finch to "shut up" under circumstances where Rios violated New York State Penal Law provisions regarding Official Misconduct and Attempted Coercion [Sassi, Sr. Affidavit, para. 5(a); Sassi, Sr. Supplemental Affidavit, para. 4(f); Finch Affidavit, paras. 3-5; S. Finch deposition, pp. 18-20, 24, 31-3; Tabone Affidavit, paras. 1-2; Tabone deposition, pp. 14-16, 31-33; Manley Finch deposition, pp. 16-18, annexed as Exhibit 3 to Lovett Affirmation).

48. Subsequent to the interview process Rios has:

a. Committed a Class A Misdemeanor by intentionally making a retaliatory false report to the New York State Child Protective Service against Sandra Tabone, a resident of the City and another neighbor of Rios - - and one of two (the other being Shannon Finch) who filed civilian complaints against Rios for Falsely Reporting the Incident as referenced in subparagraph "c" of paragraph "47", *supra*,

b. Repeatedly stalked and menaced both Shannon Finch and Sandra Tabone by keeping their respective homes under nighttime surveillance with his hand on his firearm [Sassi Sr. Affidavit, para. 5(b); Tabone Affidavit, paras. 3-4; Finch Affidavit, paras. 7-9].

49. Prior to the interview process Police Officer Mark Thomas, another applicant for the detective promotion, suffered multiple on-the-job, disabling injuries that required multiple surgeries. As a result:

a. He was unable to work and had been placed on Section 207-c (of the New York State General Municipal Law) status as "disabled",

b. He applied to the State of New York for disability retirement, and,

c. Based upon an independent medical examination it was determined that he was so debilitated that he was incapable of holding his duty weapon using both hands (Sassi, Sr.

13

Affidavit, para. 6; Exhibit 2 to said Affidavit (Thomas medical evaluation); Braun Affidavit of 11-30-06, para. 4).

50. Based upon the list of five that resulted from the interview process the Chief of Police recommended to City Administrator Joseph Braun that the detective promotion be given to Plaintiff since Plaintiff was the best qualified candidate, had extensive specialized training, had been the recipient of numerous awards and commendations, and had *inter alia* substantial experience performing detective duties when assigned to the Dutchess County Narcotics Task Force [Sassi, Sr. Affidavit, paras. 3, 5, 6; Sassi, Sr. Supplemental Affidavit, para. 3(g); Sassi, II Affidavit, para. 3(c); Exhibit F to Braun Affidavit of 11-30-06; Sassi, Sr. deposition of 11-15-06, pp 13-14].

51. Braun, in response, advised the Chief of Police that by reason of the City's nepotism law, Plaintiff was ineligible for promotion to any position (Exhibits E and G to Braun Affidavit of 11-30-06; Sassi, Sr. deposition of 11-15-06, p. 17).

52. As a result, the Chief recommended that the detective promotion be given to Officer Thomas, upon the speculative hope that Thomas might be able to return to duty notwithstanding his disabilities (Sassi, Sr. Affidavit, para. 6; Braun Affidvit of 11-30-06, para. 8).

53. Shortly thereafter the City Council promoted Rios to the detective vacancy, motivated in substantial respect: i) to punish Plaintiff for his father's exercise of his rights as guaranteed by the First Amendment to the United States Constitution, and ii) by the circumstance that Rios, an Hispanic, is fluent in Spanish (Sassi, Sr. Affidavit, paras. 2, 3, 4, 5, 6, 7, 8, 9; Sassi, Sr. Supplemental Affidavit, paras. 2-5; Sassi, II Affidavit, para. 2-3; Sassi, Sr. deposition of 11-15-06, pp. 11-15, 29; Sassi, II deposition of 11-15-06, pp. 16-20, 55-6, 57).

54. Rios is Hispanic and by way of ethnic characteristics, presents as such; Plaintiff is Caucasian and by way of ethnic characteristics, presents as such (Sassi, II, para. 3(b); Antalek Affidavit, para. 3; Gould Affidavit of 11-30-06, para. 3).

55. Other than with respect to the above-referenced civilian complaints lodged against Rios and his ethnicity, the members of the City Council and the City Administrator had no basis in fact for evaluating Rios' job performance, job skills, background, ability to perform the duties of a police officer, ability to perform the duties of a detective, honesty or lack of same, and/or competence (Sassi, Sr. Affidavit, para. 5(b)(vi).

56. By way of contrast, the Chief of Police was the only individual qualified, by reason of his actual knowledge as to Rios' job history, to make the judgment call as to whether or not Rios should or should not be promoted as a detective. *Ibid.*

57. In fact over the past three plus decades, upon the recommendation of the City's Chief of Police the City Council has, with one exception, always promoted the individual recommended by the Chief of Police (Sassi, Sr. Affidavit, para. 3).

57. The only exception to that decades-long custom and practice occurred in 2005 when the City Council refused to promote Plaintiff to the position of detective and instead:

    a. First appointed a lesser qualified Hispanic, and then,

    b. Appointed a disabled, lesser qualified Caucasian, as set forth *infra. Ibid. See* Sassi, II deposition of 11-15-06, pp. 88-89).

58. Following Rios' promotion, Officer Thomas arranged to have his private treating physician certify him as being capable of returning to a full duty status - - despite the circumstances that:

15

a. No independent medical examination was conducted to ascertain whether he had indeed suddenly recuperated from the disabilities that prompted his 207-c job injured status and his submission of an application for disability retirement,

b. The duties of a detective in the City Police Department are substantively the same as those performed by Police Officers, and,

c. A disabled "detective" working full duty presents a grave health and safety risk to his brother officers, civilians and the detective himself (Sassi, Sr. Affidavit, para. 6; Exhibit 2 to said Affidavit; Sassi, Jr. deposition of 11-15-06, pp. 88-9).

59. Based solely upon Thomas' private treating physician's clearance of him to return to duty, the City Council (without notifying any other potential applicants for that promotion) promoted Thomas to the rank of detective, skipping Plaintiff despite the fact that:

a. Plaintiff suffers from no job disability and unlike Thomas is physically capable of performing all the duties of a full-time detective,

b. Plaintiff can in fact perform all of the duties of a full-time police officer,

c. Plaintiff is better qualified for the detective promotion based upon his specialized training, on-the-job detective work with the Narcotics Task Force, his extensive educational background, and *inter alia* his extensive commendations and awards. *Ibid*; *see* Braun Affidavit of 11-30-06, para. 14; Sassi, II deposition of 11-15-06, p. 89).

60. In connection with the Thomas promotion to detective, the City Administrator by way of explanation publicly stated that Plaintiff could not be promoted by reason of his familial relationship to the Chief of Police - - even though this Court had declared void the City's nepotism law [Exhibit 4 (Poughkeepsie Journal newspaper article dated August 23, 2006) annexed to Affirmation of Jonathan Lovett, quoting Braun regarding the Thomas promotion to

16

detective: "A father should not be able to recommend his son for a promotion. There's a conflict of interest"].

61. The promotions of Rios and Thomas to the position of detective did not, nor can they, bestow upon either of them a property right in that job title. They serve in the detective positions "at will" and as such the City Council can at any time with or without cause remove them as detectives and return them to full duty at their "hard rank" of police officer.

Dated: White Plains, New York
       December 19, 2006

LOVETT & GOULD, LLP
By: _____
    Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10601
914-428-8401

17